UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
                                                :

UNITED STATES OF AMERICA,        :        Docket No. 17-372 (JS)

                                                :

                 - against -                :

MICHAEL WATTS

                 Defendant.        :

-------------------------------------------------x

## WATTS MOTION FOR ACQUITTAL

JOSEPH W. RYAN, JR., P.C
By: _____
JOSEPH W. RYAN, JR. (2408)
Attorneys for Defendant
MICHAEL WATTS
MELVILLE LAW CENTER
225 OLD COUNTRY ROAD
MELVILLE, NY 11747
516 629 4896
joeryanlaw@earthlink.net

1

## Preliminary Statement

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the Court must grant the motion where the evidence "in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and theory of innocence' then 'a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Glen* 312 F3d 58, 70 (2d Cir 1996). We respectfully submit that a jury cannot not accept the government theory of guilt and reject the defense theory of innocence. There is substantial evidence to indicate that Mr. Watts acted in good faith with no intent to violate the law.

## STATEMENT OF THE CASE

When Mr. Watts engaged Matz' firm to market the HECC stock, there is no evidence from which a juror could reasonably conclude beyond a reasonable doubt, that he had agreed to violate the law by endorsing Matz' illegal boiler room schemes. Matz boasted in their initial telephone conversation that he and his partner Ron Hardy had successfully promoted two over-the counter-stocks, CES Synergies and First Choice Health Care by increasing their share volume and price. Matz explained how that was done:

> we contact investors, that we get them to sign up for a subscription. During that subscription period, we recommend stocks, one or two a month, and that we call them, we stay in contact with them, and with the promoted stocks that we get paid in, we call them, we stay on top of them and we push penny stocks…we support the companies, he stocks that we get involved with and promote…with penny stocks, it's very common for them , for somebody to come in, could be early in the morning, could be during the day, and somebody tries to sell a certain amount of shares to sell a certain amount of shares and that could cause the price to drop very drastically. I explained that we have the ability with our own accounts that we control to go in there, buy it back up, bring it back to exactly where the price was, if not exactly where it was, as close as where we can get it so it looked like it never happened and then later on, we would cross those shares out to an investor.

Tr.88. Mr. Watts was impressed because "he was looking to increase volume, keep the price stable…where it was currently trading and give support when needed. Tr. 88-89.

2

Thereafter Mr. Watts signed three successive contracts to engage the Matz' firms for a period of three months each. GX 101A, 144A & 155A. Each Consulting contract specified the "outbound telemarketing services providing informational awareness for publicly traded company Hydrocarb Corp." Compensation terms were consistent with a cash-strapped start-up venture. Mr. Watts tendered 650,000 restrictive shares of HECC stock and reduced cash demands by requiring only three months of payments, payable bi-weekly at $12,500. Tr.156.

At no time did Matz' reveal to Mr. Watts his illegal Boiler room tactics, his false brokerage trading accounts (Herman Matz and Melissa Kurtzge) or that being "kicked out" the securities precluded working as a legitimate investor/public relations firm.

Nor did Matz' reveal his illegal operation when he demanded of Mr. Watts, payment for his services at a later dinner meeting in New York City. Tr.267-68. Enlisting the aid of Robert Gleckman and Larry Isen to satisfying Matz' pressing demand did not serve the prosecution's theory of guilt. Gleckman disavowed any intent, or even awareness, of Matz' illegal boiler room operation.Tr.496. Based upon his own personal experience, Gleckman explained to the jury that, a boiler room can be operated legitimately as a marketing firm. Tr.503-04.

The government's evidence of matched trades does not exclude legitimate selling of HECC stock by Mr. Watts. GX-370 (blue sheets) shows that during the same period of time, Mr. Watts made approximately 326 trades to sell HECC stock without any dependence whatever on Mr. Matz. Without any intent to commit fraud, Mr. Watts' contacting Matz or vice versa to find if there were any investors interested in the stock was normal normal and reasonable. The government effort to pick out a minimal amount of trades that coincide by amount and time does not permit a juror to find there was any intent "to create the appearance that the stock price and volume *rose* as a result of genuine market demand for the securities." Proposed indictment ¶ 13. Emphasis added. The record

3

remains abundantly clear that Mr. Watts sold HECC stock to fund the pressing cash demands of HECC ($994,000) and not for his personal enrichment. In short there is insufficient evidence that the so-called matched trades was part of a "device, scheme or artifice to defraud" in violation of law.

## CONCLUSION

Because the government's evidence and theory of guilt is equally consistent with the defense theory of innocence, there exists a "reasonable doubt" as a matter of law. Mr. Watts is entitled to a judgement of acquittal on all seven counts including the alleged money laundering.

Dated: Melville, NY 11747
October 21, 2019

By: JOSEPH W. RYAN, JR.
JOSEPH W. RYAN, JR. (2408)
Attorneys for Defendant MICHAEL WATTS.
Melville Law Center
225 Old Country Road
Melville, NY 11747-3111
516-629-4968
joeryanlaw@earthlink.net

TO:

Honorable Richard Donoghue
United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201
    Attention: AUSA Whitman G.S. Knapp