

U.S. Department of Justice

United States Attorney
Eastern District of New York

WK:KTF  
F. #2018R00906

271 Cadman Plaza East  
Brooklyn, New York 11201

March 6, 2024

<u>By ECF and Hand Delivery</u>

The Honorable Joanna Seybert  
United States District Judge  
Eastern District of New York  
100 Federal Plaza  
Central Islip, New York 11722

> Re: United States v. Michael Watts  
> Criminal Docket No. 17-372 (Dft. No. 4) (JS)

Dear Judge Seybert:

The government respectfully submits this letter in reply to the defendant Michael Watts's Supplemental Resentencing Memorandum, dated March 3, 2024 ("Supp. Mem.") (ECF Dkt. No. 1371). The defendant attached three exhibits to its submission that do not withstand scrutiny and do not have probative value. Instead, they further reflect the defendant's total lack of remorse, and the relentless efforts of the defendant and those around him to mislead the Court. <u>See</u> the government's February 14, 2024 letter in anticipation of sentencing (ECF Dkt No. 1367) ("Govt. Sent. Let.-2") at 8-10 (outlining previous misleading statements to the Court).

I. Exhibit B

Exhibit B is a third one-page letter from Dr. Arsalan Khan, from whom the defendant previously submitted sparse, virtually identical "Physician's Letters" "to provide a medical excuse for Mr. Micheal Watts." (ECF Dkt. Nos. 1362-1; 1357 at 3 ("To Whom it May Concern")). Exhibit B provides no information not already provided. As the government noted in the February 21, 2024 status conference in this matter, despite these medical excuses the defendant curiously has provided the government and Probation with virtually no records from Dr. Khan's practice. (Tr. of Proceedings, February 21, 2024, at 6).

II. Exhibit C

Exhibit C is a two-page letter from Michael Abdelsayed, a doctor of osteopathy, who opined that the "rehabilitation care that Mr. Watts requires, I believe, is greater than what could be provided to Mr. Watts if incarcerated." Dr. Abdelsayed's belief should be wholly discounted because, when contacted by the government, he acknowledged having no specific knowledge of or experience with the medical care provided by the Federal Bureau of Prisons.

His belief is also contradicted by the analysis of Ellen Mace-Leibson, M.D., Acting Regional Medical Director for the Federal Bureau of Prisons ("BOP"), Northeast Region, who—after an in-depth medical review—determined that "the BOP will be able to provide appropriate care for Mr. Watts should he be sentenced to a term of incarceration and committed to the custody of the BOP."

III. Exhibit D

Exhibit D is a letter from Kent P. Watts, the defendant's brother, offering purported information about the defendant and his family members. As itemized in the government's recent sentencing memo, Kent Watts previously provided this Court with this category of information and it proved to be contradicted by evidence uncovered by the government. (See Govt. Sent. Let.-2 at 8). He does so here again. Exhibit D proffers information that is factually inconsistent with Kent Watt's own previous submission to the Court (compare granddaughter is "high functioning" (Ex. D at 2) with granddaughter "is fully dependent on [the defendant]" (ECF Dkt. No. 982, Ex. F)). In Exhibit D, Kent Watts additionally asserts that "[n]either of [granddaughter's] parents provide . . . emotional support . . ."), but the video evidence recently submitted by the government reveals both parents showing care and support to the college-age granddaughter (ECF Dkt. No. 1364, Exs. 3, 5-6).[1]

In Exhibit D, Kent Watts blames the defendant's conduct in this case entirely on others (see, e.g., Ex. D at 2) and represents to the Court that he was ". . . shocked when the jury found Mike guilty of defrauding HECC investors. Mike and I were by far the largest losers." (ECF Dkt. No. 982, Ex. F; see also Ex. D. at 2-3). Kent Watts's blame-assigning and purported shock is rendered incredible not only by the extensive evidence at trial, but also in light of the fact that Kent Watts was named as a co-defendant with Michael Watts in a 2017 United States Securities & Exchange Commission ("SEC") lawsuit which contained 14 pages of detailed allegations that the defendant Michael Watts (together with Kent Watts): (a) filed untrue and misleading schedules and disclosures with the SEC, (b) made untrue and misleading statement to HECC's transfer agent and auditors, (c) failed to file required reports with the SEC to disclose their HECC stock ownership, and (d) aided and abetted violations by Kirby Caldwell, Kent Watts's nephew, who was alleged to have sold HECC stock in unregistered, non-exempt transactions. See Complaint (ECF Dkt. No. 1), Sec. & Exch. Comm. v. Kent P. Watts, Michael E. Watts & Kirby Caldwell, 4:17-cv-539 (S.D. Tex.) (the "Kent P. Watts Matter"), attached hereto as Exhibit 1.[2] Having received such detailed allegations of fraud, Kent Watts's profession of shock at the verdict in this case rings hollow.

---

[1] It is significant that Probation's sentence recommendation was based upon the representations made by the defendant and his family, which have subsequently been contradicted by the evidence uncovered by the government and presented to the Court.

[2] According to the Southern District of Texas docket, Michael Watts settled the Kent P. Watts Matter with the SEC on March 2, 2023, neither admitting nor denying the allegations of the complaint. (See Kent P. Watts Matter, ECF Dkt. No. 31). The Docket also indicates that the

For the reasons above, the purported information provided by Kent Watts in Exhibit D should be discounted in its entirety.

IV. <u>Conclusion</u>

The defendant repeatedly misled honest, hard-working citizens—many of them seniors living on fixed income—to get money for himself. He selfishly ruined lives in the process. He has expressed no remorse, other than for his own misfortune. Since a jury convicted him after trial, Michael Watts and his family have not only relentlessly attempted to mislead the Court about their personal circumstances to engender sympathy, but have also attempted to distract the Court from focusing on (a) the clear evidence that led to the defendant's conviction by jury after trial; (b) the appalling consequences visited upon the scores of victims in this matter, many of them elderly; (c) the history and characteristics of the defendant as framed by, among other things, (i) his "extensive record of violations of FINRA rules and federal securities laws, which commenced shortly after he entered the securities industry over thirty years ago" (letter to the district court from Peter J. Melley, Director of FINRA's Criminal Prosecution Assistance Group),[3] (ii) the allegations of the Kent. P. Watts Matter, and (iii) the allegations of the <u>Lifepay</u> matter; and (d) the ongoing misleading conduct of the defendant and his family in connection with the defendant's sentencing proceedings before this Court. Michael Watts must not be exempted from being held to account.[4]

The Circuit panel concluded that the Court's previous sentence of one year and a day was substantively unreasonable. Watts's sentence will, in reality, be about half of Your Honor's pronounced sentence. These all provide a sound basis to sentence the defendant to a meaningful term of incarceration that will protect the public, engender respect for the law, and provide deterrence. For these and all the other reasons articulated above and in all the government's prior submissions, the government respectfully requests that the Court sentence defendant Michael Watts to a term of 120 months' imprisonment—the term the Court imposed

---

matter remains pending as to Kent Watts. Note that the Kent P. Watts Matter is distinct from the separate SEC elder fraud matter in which Michael Watts was a defendant, cited in Govt. Sent. Let.-2 at 10: <u>Sec. & Exch. Comm. v. The Lifepay Group LLC et al.</u>, 4:18-cv-1098 (S.D. Tex.). Michael Watts separately settled the <u>Lifepay</u> matter with the SEC on December 19, 2022, similarly neither admitting nor denying the allegations of the complaint. (<u>See id.</u> (ECF Dkt. No. 143)).

[3] This background amplifies the importance of Court's observation, in sentencing co-defendant Dennis Verderosa to a term of 72 months', that that the Court has seen "a lot of people involved in fraud who go out there in their 80s and commit the same type of crimes." (Transcript of Proceedings, September 12, 2019, at 58-59).

[4] The defendant argues that he should receive a lesser sentence than co-defendants Chartier and Hardy (Supp. Mem. at 4) because his personal profit was less than theirs. But Watts fails to compare himself to co-defendants who were mere cold-callers (not high-rolling insiders

on co-defendants Jeffrey Chartier, Ronald Hardy and Brian Heepke—and order him to surrender to begin serving his sentence promptly following sentencing.

                                                    Respectfully submitted,

                                                    BREON PEACE
                                                    United States Attorney

By:          /s/
       Whitman G.S. Knapp
       Kaitlin T. Farrell
       Assistant U.S. Attorneys
       (718) 254-6107/6072

Enclosure

c.c.:    Clerk of Court (JS) (by ECF and Email)
        Joseph Ryan, Esq. (Attorney for Defendant) (by ECF and Email)
        Steven S. Guttman, U.S.P.O. (by Email)

---

like himself) and who profited far less than Watts did. For example, cold-caller McArthur Jean, whose profit was $445,309 less than Watts, was sentenced to four years' custody; cold-caller Dennis Verderosa, whose profit was $219,228 less than Watts, was sentenced to seven years' custody. Watts's relative culpability increases even further when one takes into account the more than one million additional dollars that Watts paid Power Traders-related entities, Isen and Matz, to help Watts to steal the money he pocketed. (See Govt. Trial Ex. 362, attached as Exhibit A (ECF Dkt. No. 987-2) to the government's September 2, 2021 sentencing letter (ECF Dkt. No. 987-1). In sentencing cold-caller Jean, the Court rightly noted "*This is such a serious case. It has ruined the lives of these victims beyond repair. Think about it. They saved. They did the right thing all their lives. He took away their dignity. He took away their pride. He allowed them not even to have insurance anymore.*" (Transcript of Proceedings, July 26, 2019, at 14). Watts, as an insider who both personally profited and who also fueled the scheme with more than one million dollars in additional stolen funds, should receive a more substantial punishment than a cold-caller who made much less than Watts did.