# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

―――――――――――――――――――――――――

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

        v.

KENT P. WATTS, MICHAEL E. WATTS, AND
KIRBY CALDWELL

    Defendants.

―――――――――――――――――――――――――

§
§
§
§
§
§ Civil Action No.
§
§
§
§
§
§
§

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Plaintiff" or the "Commission") alleges as follows against Defendants Kent P. Watts, Michael E. Watts, and Kirby L. Caldwell:

**Summary**

1.    From 2012 through 2014, Defendants Kent P. Watts and Michael E. Watts, brothers, participated in a fraudulent scheme to get the stock of Hydrocarb Energy Corporation ("Hydrocarb") listed on a major stock exchange. At the time, Hydrocarb was a small oil-and-gas company whose stock was quoted for sale in the over-the-counter market. The Wattses believed that listing the stock on a major exchange would facilitate the company's capital raising efforts and eventually provide a market in which they could sell their Hydrocarb shares at a profit. While pursuing the exchange listing, however, they violated the federal securities laws.

2.    Among other things, they filed untrue and misleading schedules and disclosures with the SEC, made untrue and misleading statements to Hydrocarb's transfer agent and auditors, and failed to file required reports with the SEC to disclose their Hydrocarb stock ownership. They also aided and abetted violations by Defendant Kirby L. Caldwell, Kent

Watts's nephew, who sold Hydrocarb stock in unregistered, non-exempt transactions. Ultimately, the effort to list Hydrocarb's stock on an exchange failed, and the company filed for bankruptcy in April 2016.

3.  By committing the acts alleged in this Complaint, Kent Watts violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1) and (3)], Sections 10(b) and 13(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78(j)(b) and 78m(d)], and Exchange Act Rules 10b-5, 13b2-2, and 13d-1 [17 C.F.R. §§ 240.10b-5, 240.13b2-2, and 240.13d-1], aided and abetted Hydrocarb's violations of Exchange Act Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Exchange Act Rules 12b-20, 13a-1, 13a-13, and 13a-14 [17C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13, and 240.13a-14], and aided and abetted Caldwell's violations of Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and (c)].

4.  By committing the acts alleged in this Complaint, Mike Watts violated, and unless restrained and enjoined will continue to violate, Securities Act Sections 17(a)(1) and17(a)(3) [15 U.S.C. §§ 77q(a)(1) and (3)], Exchange Act Sections 10(b) and 13(d) [15 U.S.C. §§ 78j(b) and 78m(d)], and Exchange Act Rules 10b-5 and 13d-1 [17C.F.R. §§ 240.10b-5 and 240.13d-1] and aided and abetted Caldwell's violations of Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and (c)].

5.  By committing the acts alleged in this Complaint, Caldwell violated, and unless restrained and enjoined will continue to violate, Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and (c)].

6.  In the interest of protecting the public from further violations by the Defendants,

the SEC seeks, among other things, permanent injunctions and civil money penalties from each Defendant and, as to Defendant Kent Watts, an order barring him from serving as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

**Jurisdiction and Venue**

7.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d),  21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e),  and 78aa].  Defendants, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices and courses of business described in this Complaint.

8.      Venue lies in the Southern District of Texas pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §§ 77v(a) and 78aa].  Kent and Mike pursued a fraudulent scheme while living and working in this District. Further, Caldwell's unregistered sales of securities occurred in this District.

**The Parties**

9.      The Commission is an agency of the United States of America charged with enforcing the federal securities laws.

10.      Defendant Kent Watts, aged 69, is a resident of Pearland, Texas, and served as the CEO and Chairman of Hydrocarb Energy.  Kent Watts is the brother of Mike Watts.

11.      Defendant Mike Watts, aged 71, is a resident of Houston, Texas, and served as a consult of Hydrocarb.  Mike Watts is the brother of Kent Watts.

12.      Defendant Kirby Caldwell, aged 34, is a resident of Pearland, Texas.  Kirby is the nephew of Kent Watt's and is a former employee of a private company owned by Kent Watts.

## STATEMENT OF FACTS

### Kent Controlled a Company Called HCN

13.     In December 2009, Kent and a business associate formed "HCN," a private

Nevada corporation.  Kent served as HCN's CEO and Chairman, and his immediate family

owned more than 50% of HCN.  His associate owned approximately 35% of HCN.  HCN, which

purportedly developed oil-and-gas leases overseas, acquired an oil-and-gas concession in

Namibia in 2011.

### Mike and his Family Controlled Hydrocarb

14.     In 2013, Mike and his family controlled Hydrocarb.  Mike owned more than 5%

of Hydrocarb's stock, which he held in his name and in the name of Geoserve Marketing,

another company he owned.  Three other companies—each one owned by one of Mike's three

children—collectively owned more than 40% of Hydrocarb's stock.  Mike controlled his

children's companies, however, including the Hydrocarb stock held in their names.  From

December 2009 through December 2013, Mike's son-in law, who owned approximately 18% of

Hydrocarb's stock, served as Hydrocarb's President and CEO.

### Kent and Mike's Exchange-Listing Plan for Hydrocarb

15.     In 2013, the Watts brother developed a plan in which Mike's company,

Hydrocarb, was to acquire Kent's company, HCN.  On July 20, 2013, the two executed a

Memorandum of Understanding (the "MOU") memorializing their plan.  As specified in the

MOU, Mike would own approximately 47% of Hydrocarb's stock following the acquisition,

while Kent and the minority HCN shareholders would own approximately 43%.  The MOU

further specified that Kent would become Hydrocarb's board chairman and that his HCN

associate, among others, would become Hydrocarb directors.  The transaction was designed to

increase the brothers' ownership in Hydrocarb, ensuring their control over the company.

16.     A key feature of the MOU was to lay out the brothers' plan to get Hydrocarb's stock uplisted to a major exchange.  A few months earlier, the brothers had applied to list Hydrocarb on the Nasdaq stock exchange, but it had not yet been accepted.  Instead, Hydrocarb's stock was quoted for sale on OTC Link, an electronic stock-quotation service for over-the-counter trading operated by OTC Markets Group, Inc.

17.     Kent and Mike had experience uplisting a small company from the over-the-counter market to an exchange and selling their holdings in the company for a profit.  In the 2000s, they uplisted the stock of a company they controlled, Hyperdynamics Corp., to the NYSE, reaping tens of millions of dollars in profits by selling their Hyperdynamics stock in exchange transactions.  The Hydrocarb MOU was the brothers' plan to duplicate their prior success with Hyperdynamics.

**Mike's Effort to Support and Stabilize Hydrocarb's Stock Price**

18.     The Nasdaq listing requirements contained various standards that an applicant must meet.  These criteria included, among other things, a minimum public-float valuation, a certain number of shareholders, a minimum market capitalization, a minimum share price.  Kent and Mike pursued listing under Nasdaq criteria that required a $15 million public float, a $50 million market capitalization, 300 shareholders, and a minimum closing price of $2 per share for at least five consecutive business days prior to listing approval.

19.     In 2013, Mike executed hundreds of trades in Hydrocarb's stock through his brokerage account, designed to support and stabilize Hydrocarb's share price in advance of a Nasdaq listing.  Mike's trading records reveal extended periods of small buys interspersed with a few larger sales.  For many of the sales, Mike sold shares at a low price and purchased additional shares on the same day at a higher price.

20.     For example, on April 24, 2013, Mike began with 10 separate transactions in which he bought more than 5,000 shares; the lowest purchase price was $2.03. Later that day, he sold 1,850 shares at a price of $1.93. Following the sales, and still on April 24, Mike bought an approximately 5,000 more Hydrocarb shares where the lowest price was $2.03. He made similar trades on May 21, 2013, purchasing 100 shares at $1.97/share, then sold 3,300 shares for $1.85 each. Later, he bought 2,510 shares in 7 transactions; the low price was $1.94. He then sold 3,800 shares at $1.90, before placing three more buys of a total of 2,400 shares, the lowest price being $1.95.

21.     Mike's support-and-stabilization trading accounted for a major portion of the market activity in Hydrocarb's stock. From March through August 2013, his trading accounted for 20% of Hydrocarb's trading volume. He incurred a net loss of $18,406.88 in the transactions. The following table summarizes his monthly trading:

| Month | Total Volume | Mike's Volume | Gain (Loss) |
|---|---|---|---|
| March | 202,931 | 34,975 – 17.2% | ($12,331.22) |
| April | 263,491 | 53,905 – 20.4% | ($101,477.84) |
| May | 923,670 | 184,196 – 19.9% | $57,845.59 |
| June | 762,567 | 166,425 – 21.8% | $45,368.94 |
| July | 180,654 | 20,840 – 11.5% | $7,831.08 |
| August | 166,959 | 49,439 – 29.6% | ($15,643.43) |
| | **2,500,272** | **509,780 – 20.3%** | **($18,406.88)** |

### The Caldwell Sham Stock Transaction

22.     On December 9, 2013, Hydrocarb acquired HCN under a share-exchange agreement dated November 27, 2013. In the months leading up to the acquisition, however, HCN had received two blocks of stock from Hydrocarb in payment for the consulting services HCN purportedly provided to Hydrocarb. HCN received 575,000 Hydrocarb shares in September 2013 and 1.8 million in October 2013. With the planned acquisition looming, Kent realized that any Hydrocarb stock held by HCN would become Hydrocarb treasury stock once

Hydrocarb acquired HCN. He knew that, if this stock became treasury stock, it would be unavailable for Kent to sell once Hydrocarb achieved the contemplated exchange listing.

23.     To prevent the shares from reverting to Hydrocarb's treasury, Kent orchestrated a sham stock transaction to "park" these shares with his nephew, Kirby Caldwell. In September 2013, at Kent's direction, HCN sold Caldwell 575,000 purportedly "free-trading" Hydrocarb shares in exchange for a $1 million interest-free promissory note (the "Note"). The sham transaction created the false appearance that HCN did not own the Hydrocarb shares at the time of the acquisition, and thus would not become part of Hydrocarb's treasury stock. Once the HCN acquisition was completed, the Note would become a Hydrocarb asset.

24.     Despite the so-called sale, the Caldwell shares remained under Kent's control. Kent designated Caldwell as the straw-man buyer because Kent controlled his nephew-employee. Caldwell's assets and income were grossly insufficient to pay the Note's $1 million principal. Moreover, the Note was interest-free, and the transaction required Caldwell to provide no collateral for the Note other than the shares themselves. The Note transaction was simply a device used to conceal the Kent's true ownership and control over the 575,000 shares.

25.     In reality, the 575,000 shares were restricted and, therefore, not "free trading." Caldwell was under Kent's control and therefore an affiliate of HCN and Hydrocarb. Consequently, SEC Rule 144 requires that the shares contain restrictive legends preventing their sale for at least six months.

26.     In January 2014, Caldwell sold 3,300 of these shares in the public market fewer than six months after obtaining them. No registration statement was on file with the SEC regarding these transactions. And the sales did not satisfy the requirements of Rule 144. Moreover, because Caldwell had not actually paid for the shares—and remained under the

control of Kent, who was by then Hydrocarb's CEO—he was never their beneficial owner. The transactions were, in fact, sales by Hydrocarb.

27.     Kent and Mike knew the Note transaction was a sham. Kent approached Caldwell with the idea of a "sale," and he drafted the note for the transaction. He also signed the note and transferred the shares to Caldwell. Kent regularly discussed with Mike "working" the Caldwell shares to generate income for Hydrocarb. Mike assisted Caldwell in finding a brokerage account for the shares. Neither Kent nor Mike took steps to ensure Caldwell did not sell the shares on the open market within six months of the purported "sale" to Caldwell, as required by SEC Rule 144. Kent and Mike therefore knowingly provided substantial assistance to Caldwell in selling the shares in unregistered transactions.

### Kent Filed a Fraudulent Schedule 13D

28.     Exchange Act Section 13(d) of the alerts investors to potential changes in a company's corporate control so that they can properly evaluate investment decisions about company's stock. Once an individual acquires more than 5% of an issuer's shares, the individual is required to file a Schedule 13D with the SEC to report those holdings.

29.     When HCN received the 1.8 million shares from Hydrocarb on October 31, 2013, it held 12.3% of Hydrocarb's shares. HCN was therefore obligated to file a Schedule 13D with the SEC, which it did on October 31, 2013. Kent signed the filing on behalf of HCN.

30.     The Schedule 13D, however, contained a number of untrue statements. It stated that that HCN was unaware of the following: (1) any plans by any person to acquire additional Hydrocarb securities, (2) any extraordinary transaction, including a merger or reorganization, and (3) any changes in management or the Board. These statements were not true, and in fact had been contemplated by Kent and Mike and documented in their July 2013 MOU.

31.     Just two weeks after Kent filed the Schedule 13D, Hydrocarb named a new CEO, President, and Chairman of the Board (Kent), along with another Board member.  Two weeks after that, Hydrocarb announced that it was acquiring HCN with over 20 million shares of Hydrocarb stock, thus contradicting Kent's representations in the Schedule 13D.  Kent and Mike contemplated each of these actions in the MOU.  When he filed the Schedule 13D, Kent knew or was severely reckless in not knowing that, in reality, he and Mike had plans to acquire additional Hydrocarb securities, that Hydrocarb intended to acquire HCN in a share-exchange transaction, and that Hydrocarb's management and Board would undergo changes at Kent and Mike's direction.

**The SMDRE Sham Transaction**

32.     Kent also had to find a way to divest HCN's remaining 1.8 million Hydrocarb shares to prevent those too from reverting to Hydrocarb's treasury in the HCN acquisition.  For this purpose, he turned to SMDRE, LLC, a Texas company owned and controlled by Mike.  Just days before the Hydrocarb-HCN acquisition closed, HCN sold the 1.8 million Hydrocarb shares to SMDRE for a $1.8 million non-interest-bearing, unsecured note.

33.     Like the Caldwell transaction, Kent and Mike knew the SMDRE transaction was a sham.  In expectation of Hydrocarb's uplisting, Mike filed a document with the Texas Secretary of State, reporting that another company he wholly owned, Lifestream LLC, had relinquished 51% of its 100% SMDRE stake to a third party.  Mike's purported reduction in ownership was designed to convey the false impression that SMDRE was not under Mike's control when it acquired the 1.8 million shares.  The Watts brothers concocted these SMDRE transactions to both maintain and conceal their control over the shares in anticipation of their eventual sale into the market upon uplisting.

**Mike Concealed His Ownership of Hydrocarb Stock**

34.     Mike beneficially owned Hydrocarb stock in his name and in the name of his company, Geoserve Marketing.  As of December 30, 2013, he beneficially owned 3,703,750 shares, representing 5.9% of Hydrocarb's 62,740,882 outstanding shares.  As a holder of 5% or more of Hydrocarb's shares, Mike was obligated to file his own Schedule 13D to disclose his ownership.  But he never did.

**Sham Payments on the Caldwell Note**

35.     In early 2014, Hydrocarb was experiencing low cash flow.  Kent and Mike, along with Hydrocarb officers, discussed the need to inject cash into Hydrocarb to maintain its domestic oil-and-gas operations, which served as its only source of income.  Kent was also concerned that Hydrocarb's auditor, MaloneBailey LLP, would label Hydrocarb a "going-concern" risk in its audit report, an indication that Hydrocarb might have insufficient assets to continue as a solvent corporation over the next twelve months.  Kent understood that, if MaloneBailey raised a going-concern risk, then Hydrocarb's share price would likely fall, jeopardizing the uplisting plan.

36.     To inject capital into Hydrocarb, Kent sought repayment of a portion of the Caldwell Note.  Kent knew, however, that Caldwell did not have the money to repay the Note.  And he did not want Caldwell to sell hundreds of thousands of shares into the market, which he believed would have driven down Hydrocarb's stock price even further.  So Kent loaned Caldwell $400,000, who immediately paid Hydrocarb $375,000 on the Note.  Because the Note was itself a sham, Caldwell's payment on the Note was simply a ruse designed by Kent to conceal his cash infusion into Hydrocarb.

**Hydrocarb Made Misleading Disclosures Regarding the Sham Transactions**

37.     In its first-quarter 2014 Form 10-Q, and in subsequent SEC filings, Hydrocarb did not disclose that Caldwell was Kent's nephew, or that Kent retained effective control over the 575,000 shares.  Nor did Hydrocarb disclose that Kent, the company's Chairman, was the source of the $375,000 payments on the Note by Caldwell.

38.     It was not until Hydrocarb's 2014 Form 10-K dated November 13, 2014, that Hydrocarb finally disclosed that Caldwell was Kent's nephew.  In the same 10-K, Hydrocarb disclosed, for the first time, that Kent was the source of the Note repayments purportedly "made" by Caldwell.  Hydrocarb's financial statements in all relevant SEC filings prior to the 2014 Form 10-K failed to disclose the Caldwell Note transaction and Kent's Note repayment as related-party transactions as required in such filings.  At all relevant times, Kent controlled the Hydrocarb's public filings.

39.     Moreover, Hydrocarb's March 21, 2014 Form 10-Q described SMDRE as an "unrelated party."  This statement was untrue.  Mike controlled SMDRE and owned at least 49% of it.  In addition, the Form 10-Q failed to disclose the Watts's continued control over the SMDRE shares, stating instead that "the shares are not retrievable by the Company."  Mike, Kent, and Hydrocarb also misled Hydrocarb's auditors by claiming that Mike was "no longer involved" with SMDRE, despite his 49% stake and control over SMDRE.

**Kent Misled Hydrocarb's Auditors**

40.     As mentioned above, at all relevant times, Hydrocarb's financial statements were audited MaloneBailey.  Kent misled MaloneBailey with respect to the Caldwell transactions by failing to tell MaloneBailey that Caldwell was his nephew.  Moreover, Kent did not disclose to Malone Bailey that he loaned Caldwell $400,000, $375,000 of which was used to pay down the

Note.

41.     Kent also misled MaloneBailey with respect to the SMDRE transaction by failing to tell MaloneBailey that the SMDRE "sale" was a related-party transaction.  As a result, Hydrocarb Energy's books, records, and SEC filings inaccurately described the Caldwell and SMDRE transactions, as well as the Note repayments.

42.     It was not until October 2014, more than one year after the Caldwell transaction was completed, that Kent informed MaloneBailey of his relationship to Caldwell or that he gave the funds to Caldwell to pay down the Note.  At the same time, MaloneBailey was told of Mike's ownership interests in SMDRE.

43.     As a result of the misleading disclosures and recording of the Caldwell transaction and Note payments, Hydrocarb's disclosures and financial statements in its SEC filings were not accurate.

**Mike Made Untrue Statements to Hydrocarb's Transfer Agent**

44.     In September 2013, Mike requested that Hydrocarb's transfer agent remove the restrictive legend from 186,750 Hydrocarb shares owned by Geoserve.  As part of the request, Mike attested in writing that he was not an affiliate of Hydrocarb.  This statement was untrue.  In reality, Mike controlled considerably more than 10% of Hydrocarb's outstanding stock, by virtue of his control of his children's companies' shares and his share ownership, personally and through Geoserve.  Therefore, Mike was an affiliate of Hydrocarb.  Based on his misrepresentation, the transfer agent removed the legends and transferred the now purportedly unrestricted shares to Mike's brokerage account.

45.     In March 2014, after the HCN acquisition, Mike asked the transfer agent to remove the restrictive legend on another 82,750 shares owned by Mike personally, so he could

transfer them to a third party.  Mike gave the transfer agent an affidavit falsely asserting that he did not beneficially own or control any of the Hydrocarb shares held in the name of his children's companies.  The transfer agent removed the restrictive legends and transferred Mike's shares based upon his misrepresentations.

### Kent Falsely Certified Hydrocarb's Public Filings

46.     By the time Hydrocarb filed its 2014 Form 10-K, Kent was the CEO as well as the Executive Chairman.  As CEO, Kent signed quarterly certifications for Hydrocarb's first and second quarter Forms 10-Q, and an annual certification for Hydrocarb's 2014 Form 10-K. Among other things, Kent certified that Hydrocarb had correctly recorded all material transactions, and that all related-party transactions were properly recorded and disclosed.  These certifications were false.

### Hydrocarb Makes Misleading Disclosures about Board Resignations

47.     By July 2014, Hydrocarb's board of directors was dissatisfied with Kent's performance as executive chairman.  At the time, Hydrocarb had five directors.  Three of them wanted Kent to resign his position at the company.  These directors believed the Watts family's majority ownership of Hydrocarb shares made outside investment more unlikely.  And they had lost confidence in Kent's leadership after he failed to uplist Hydrocarb's stock to an exchange.

48.     Hydrocarb's board met telephonically on July 18, 2014.  Kent participated from the company's headquarters.  Believing he had the necessary three votes, one director made a motion to remove Kent from the board and from his post as executive chairman.  Before a vote could be held, however, Kent produced a document purporting to be a written consent by Hydrocarb's majority shareholders, giving Kent total decision-making authority over Hydrocarb as its executive chairman.  Nevada law permits bylaws to be changed with majority-shareholder

consent without board approval.  The director countered by moving to amend the bylaws to remove the majority-shareholder amendment powers.

49.     Kent refused to allow a vote on the amendment proposal, and thereafter refused to permit the board to vote or take any action contrary to his wishes.  In disagreement with Kent's position, three board members resigned.

50.     Item 5.02(a) of Form 8K requires disclosure when a board member resigns because of a disagreement with the company that is known to an executive officer, on any matter relating to the company's operations, policies, or practices. In such an event, the company must provide, among other things, "a brief description of the circumstances that the registrant believes caused, in whole or in part, the director's resignation."

51.     Hydrocarb filed a Form 8-K with the SEC to disclose the director resignations. But it omitted to disclose that the directors resigned over their disagreement with Kent's total decision-making authority and his refusal to allow a board votes to change the situation.

## FIRST CLAIM FOR RELIEF

### Violations of the Antifraud Provisions of the Securities Act
### Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) & (3)]

### [Against Defendants Kent Watts and Mike Watts]

52.     The Commission repeats and re-alleges Paragraphs 1 through 51 of this Complaint, as if fully set forth herein.

53.     By engaging in the conduct described above, Kent Watts and Mike Watts, directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or with severe recklessness, employed devices, schemes, or artifices to defraud, in violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

54.    By engaging in the conduct described above, Kent Watts and Mike Watts, directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails, and at least negligently, engaged in transactions, practices, and/or courses of business which operated or would operate as a fraud or deceit upon purchasers, prospective purchasers, and other persons, in violation of Section 17(a) (3) of the Securities Act [15 U.S.C. § 77q(a) (3)], through, but not necessarily limited to, their actions described in paragraphs [15-58] above, by which Kent and Mike engaged in a scheme to get Hydrocarb's stock uplisted to the Nasdaq stock exchange.

55.    By engaging in this conduct, Kent and Mike Watts violated, and unless enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

## SECOND CLAIM FOR RELIEF

### Violations of the Antifraud Provisions of the Exchange Act
### Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5]

### [Against Defendants Kent Watts and Mike Watts]

56.    The Commission repeats and re-alleges Paragraphs 1 through 51 of this Complaint, as if fully set forth herein.

57.    By engaging in the conduct described above, Kent Watts and Mike Watts, in connection with the purchase or sale of securities, by use of means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly: (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, and courses of business which operate as a fraud or deceit upon

persons, including purchasers or sellers of securities, in violation of Section 10(b) of the
Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

58.     Kent Watts and Mike Watts engaged in the above-referenced conduct knowingly
or with severe recklessness.

59.     By engaging in this conduct, Kent Watts and Mike Watts violated, and unless
enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and
Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF

**Violations of the Securities Registration Provisions of the Securities Act
Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) & (c)]**

**[Against Defendant Kirby Caldwell;
aided-and-abetted by Defendants Kent Watts and Mike Watts]**

60.     The Commission repeats and re-alleges Paragraphs 1 through 51 of this
Complaint, as if fully set forth herein.

61.     By the conduct alleged above, Caldwell, directly or indirectly, singly or in concert
with others, (i) made use of the means or instruments of transportation or communication in
interstate commerce or of the mails to sell, through the use or medium of written contracts,
offering documents, or otherwise, securities as to which no registration statement was in effect;
and/or (iii) made use of any means or instruments of transportation or communication in
interstate commerce or of the mails to offer to sell, through the use or medium of written
contracts, offering documents, or otherwise, securities as to which no registration statement had
been filed.

62.     By engaging in this conduct, Caldwell has violated, and unless enjoined will
continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(1) and (c)].

63.     By engaging in the conduct described above, Kent Watts and Mike Watts knowingly or with severe recklessness aided and abetted, pursuant to Section 20(e) of the Exchange Act, Caldwell's (i) use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of written contracts, offering documents, or otherwise, securities as to which no registration statement was in effect; and/or (iii) use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of written contracts, offering documents, or otherwise, securities as to which no registration statement had been filed.

64.     By engaging in this conduct, Kent Watts and Mike Watts aided and abetted, and unless enjoined will continue to aid-and-abet, violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(1) and (c)].

## FOURTH CLAIM FOR RELIEF

### Violations of Certification Rules of the Exchange Act
### Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14]

### [Against Defendant Kent Watts]

65.     The Commission repeats and re-alleges Paragraphs 1 through 51 of this Complaint, as if fully set forth herein.

66.     Kent Watts personally certified that he had reviewed these reports filed by Hydrocarb, which contained financial statements filed with the Commission pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and that, based on his knowledge, (a) these reports did not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by the report; and (b)

that information contained in these reports fairly present, in all material respects, the financial condition and results of the issuer's operations.

67.     At the times that Kent Watts signed and issued those certifications, he knew or was severely reckless in not knowing that the reports he certified contained untrue statements of material facts and/or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

68.     By reason of the foregoing, Kent Watts violated and, unless enjoined will continue to violate, Exchange Act Rule 13a-14 [17C.F.R. § 240.13a-14] promulgated under Section 302 of the Sarbanes-Oxley Act of 2002.

## FIFTH CLAIM FOR RELIEF

### Violations of the Reporting Provisions of the Exchange Act Section 13(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13

### [Defendant Kent Watts aided-and-abetted violations by Hydrocarb]

69.     The Commission repeats and re-alleges Paragraphs 1 through 51 of this Complaint, as if fully set forth herein..

70.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Exchange Act Rules 13a-1, and 13a-13 [17 C.F.R. §§ 240.13a-1, and 240.13a-13], require issuers of registered securities to file with the Commission factually accurate current, quarterly, and annual reports. Exchange Act Rule 12b-20 [17 C.F.R. § 240.12b-20] further provides that, in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they were made not misleading.

71.     Hydrocarb filed with the Commission – and disseminated to investors – false and misleading current, quarterly, and annual reports.  By reason of the foregoing, Hydrocarb

committed violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 12b-20, 240.13a-1, and 240.13a-13]. By engaging in the foregoing misconduct, Hydrocarb, whose securities are registered pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l], failed to file annual, quarterly, and periodic reports (on Forms 10-K, 10-Q, and 8-K) with the Commission that were true and correct, and failed to include material information in its required statements and reports as was necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

72.     Kent Watts, pursuant to Section 20(e) of the Exchange Act, knowingly or recklessly provided substantial assistance to Hydrocarb in its violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

73.     By reason of the foregoing, Kent Watts aided and abetted Hydrocarb's violations, and unless enjoined will continue to aid and abet such violations, of Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 13a-13].

### SIXTH CLAIM FOR RELIEF

**Violations of the Books and Records and Internal Controls Provisions of the Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)]**

**[Defendant Kent Watts aided and abetted violations by Hydrocarb]**

74.     The Commission repeats and re-alleges Paragraphs 1 through 51 of this Complaint, as if fully set forth herein..

75.     Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] requires issuers to make and keep books, records, and accounts which, in reasonable detail, accurately

and fairly reflect the transactions and dispositions of its assets.  Section 13(b)(2)(B) of the

Exchange Act [15 U.S.C. § 78m(b)(2)(B)] requires issuers to devise and maintain a system of

internal accounting controls sufficient to provide reasonable assurances that transactions were

recorded as necessary to permit preparation of financial statements in conformity with GAAP

and to maintain the accountability of assets.

76.     By engaging in the conduct described above, Hydrocarb, whose securities are

registered pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)]:

    a.    failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and disposition of its assets; and

    b.    failed to devise and maintain a system of internal controls sufficient to provide reasonable assurances that: (i) transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP or any other criteria applicable to such statements, and (ii) to maintain accountability of assets.

77.     As a result of the foregoing misconduct, Hydrocarb violated Sections 13(b)(2)(A)

and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78(m)(b)(2)(B)].

78.     Kent Watts knowingly or recklessly provided substantial assistance to Hydrocarb

in its failure to make and keep books, records, and accounts which, in reasonable detail,

accurately and fairly reflect the transactions and dispositions of the assets of Hydrocarb.

79.     By reason of the foregoing, Kent Watts aided and abetted, pursuant to Section

20(e) of the Exchange Act, Hydrocarb's violations, and unless enjoined will continue to aid and

abet such violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

80.     Kent Watts knowingly or recklessly provided substantial assistance to Hydrocarb

in its failure to devise and maintain a sufficient system of internal accounting controls.

81.     By reason of the foregoing, Kent Watts aided and abetted, pursuant to Section

20(e) of the Exchange Act, Hydrocarb's violations, and unless enjoined will continue to aid and abet such violations, of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

## SEVENTH CLAIM FOR RELIEF

### Misrepresentations and Misconduct in Connection with the Preparation of Required Reports
### Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2]

### [Against Defendant Kent Watts]

82.     The Commission repeats and re-alleges Paragraphs 1 through 51 of this Complaint, as if fully set forth herein.

83.     By engaging in the foregoing misconduct, Kent Watts, an officer of Hydrocarb, violated Exchange Act Rule 13b2-2(a) [17 C.F.R. § 240.13b2-2(a)] by, directly or indirectly, making, or causing to be made, materially false or misleading statements, or omitting to state, or causing another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with (i) an audit, review, or examination of the financial statements of Defendant required to be made pursuant to Commission rules, or (ii) the preparation or filing of documents or reports required to be filed with the Commission.

84.     By engaging in the foregoing misconduct, Kent Watts, an officer of Hydrocarb, violated Exchange Act Rule 13b2-2(b) [17 C.F.R. § 240.13b2-2(b)] by directly or indirectly taking action, or directing another to take action, to coerce, manipulate, mislead, or fraudulently influence an independent public or certified public accountant engaged in the performance of an audit or review of the financial statements of Hydrocarb required to be filed with the Commission while he knew or should have known that such action(s), if successful, could result in rendering Hydrocarb's financial statements materially misleading.

85.  As a result of his conduct, Kent Watts violated, and unless enjoined will continue to violate, Exchange Act Rules 13b2-2(a) and 13b2-2(b) [17 C.F.R. § 240.13b2-2].

## EIGHTH CLAIM FOR RELIEF

**Violations of the Ownership Reporting Requirements of the Exchange Act
Exchange Act Section 13(d) and Rule 13d-1**

**[Against Defendants Kent Watts and Mike Watts]**

86.  The Commission repeats and re-alleges Paragraphs 1 through 51 of this Complaint, as if fully set forth herein.

87.  Hydrocarb's common stock is registered pursuant to Section 12 of the Exchange Act and is quoted on the OTC marketplace.

88.  Section 13(d)(1) of the Exchange Act and Rule 13d-1 thereunder together require any person who acquires, directly or indirectly, beneficial ownership of more than 5% of a class of equity securities registered pursuant to Section 12 of the Exchange Act to file a public disclosure statement with the Commission.

89.  Kent Watts was under an obligation to file with the Commission true and accurate reports with respect to HCN's ownership of 5% or more of Hydrocarb securities, pursuant to Exchange Act Section 13(d) and Rule 13d-1 thereunder.  On October 13, 2013, Kent Watts signed and filed a Schedule 13D on behalf of HCN.  HCN's Schedule 13D was untrue and materially misleading, because HCN falsely disclaimed knowledge of:  (a) Hydrocarb's impending acquisition of HCN, (b) changes to the management and Board of Hydrocarb, and (c) the acquisition by any person of additional Hydrocarb securities.

90.  By reason of the foregoing, Kent Watts violated, and unless enjoined will continue to violate, Section 13(d) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13d-l thereunder [17 C.F.R. 240.13d-1].

91.     Mike Watts owned Hydrocarb shares in his own name and in the name of his private company, Geoserve Marketing.  As of December 30, 2013, Mike Watts and Geoserve held more than 5% of Hydrocarb's outstanding shares.  However, Mike Watts failed to file a Schedule 13D, as required by Section 13(d) of the Exchange Act and Rule 13d-1 thereunder.

92.     By reason of the foregoing, Mike Watts violated, and unless enjoined will continue to violate, Section 13(d) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13d-l thereunder [17 C.F.R. 240.13d-1].

## **PRAYER FOR RELIEF**

For these reasons, the Commission respectfully asks the Court to enter a final judgment:

1.     permanently enjoining Kent Watts from:

    a.     violating Sections 17(a)(1) and 17(a)(3) of the Securities Act, Sections 10(b) and 13(d) of the Exchange Act, and Exchange Act Rules 10b-5, 13a-14, 13b2-2, and 13d-1; and

    b.     aiding and abetting violations of Securities Act Sections 5(a) and 5(c), Exchange Act Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B), and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13.

2.     permanently enjoining Mike Watts from:

    a.     violating Sections 17(a)(1) and 17(a)(3) of the Securities Act, Sections 10(b) and 13(d) of the Exchange Act, and Exchange Act Rules 10b-5 and 13d-1; and

    b.     aiding and abetting violations of Securities Act Sections 5(a) and 5(c);

3.     permanently enjoining Caldwell from violating Sections 5(a) and 5(c) of the Securities Act;

4.     ordering Defendants Kent Watts and Mike Watts to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

5.      ordering Defendant Kirby Caldwell to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)];

6.      ordering that Defendant Kent Watts is barred, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d); and

7.      granting such additional relief as the Court deems just, appropriate, and equitable.

Dated: February 17, 2017

                              Respectfully submitted,


                              *s/ Timothy S. McCole*
                              TIMOTHY S. MCCOLE
                              Attorney-in-Charge
                              Mississippi Bar No. 10628
                              S.D. Tex. Bar No. 37943
                              United States Securities and Exchange Commission
                              Fort Worth Regional Office
                              801 Cherry Street, 18th Floor
                              Fort Worth, TX  76102-6882
                              Phone: (817) 978-6453
                              Fax: (817) 978-4927
                              *McColeT@sec.gov*
                              ATTORNEY FOR PLAINTIFF